# Court of Appeals
## Tenth Appellate District of Texas

---

### 10-23-00381-CR

---

Myron Lydon Ingram,
Appellant

v.

The State of Texas,
Appellee

---

On appeal from the
19th District Court of McLennan County, Texas
Judge Thomas C. West, presiding
Trial Court Cause No. 2019-743-C1

---

JUSTICE HARRIS delivered the opinion of the Court.

### MEMORANDUM OPINION

Myron Lydon Ingram was convicted of Aggravated Promotion of Prostitution (Habitual) (Count I), Possession of a Controlled Substance with Intent to Deliver, to-wit: Heroin (Habitual) (Count II), Possession of a Controlled Substance with Intent to Deliver, to-wit: Methamphetamine (Habitual) (Count III), and Possession of a Controlled Substance with Intent to Deliver, to-wit: Cocaine (Habitual) (Count IV). *See* TEX. PENAL CODE §

43.04, TEX. HEALTH & SAFETY CODE §§ 481.112, 481.113. The trial court sentenced Ingram to 99 years in prison for Count I and 50 years in prison for each of Counts II, III, and IV. We affirm the trial court's judgments.

**BACKGROUND**

Ingram and three women were in the backseat of a vehicle driven by another woman, Sondra Oaks, which was stopped for traffic violations at a Motel 6 off of Interstate 35 near Waco. A smell of marijuana came from the vehicle once the back windows were rolled down. Although no drugs or paraphernalia were found on Ingram, two of the three women in the backseat with him each possessed about a gram of methamphetamine and a meth pipe. Oaks, the driver and owner of the vehicle, possessed marijuana roaches. Women's lingerie, lubricants, condoms, and other items were found in the vehicle and in its trunk. Almost nine grams of cocaine, almost 20 grams of heroin, and four grams of methamphetamine were also located in the trunk of the vehicle. Ingram, Oaks, and two of the three women in the backseat were arrested. Only Ingram was charged with aggravated promotion of prostitution and possession with intent to deliver the drugs found in the trunk.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

Ingram was originally indicted in June of 2019. He was reindicted in June of 2020. A superseding indictment with tolling language was handed

down in September of 2023. In his first issue, Ingram contends trial counsel was ineffective in failing to move to dismiss Count I of the superseding indictment due to an alleged violation of the statute of limitations.

Claims of ineffective assistance of counsel must be firmly rooted in the record. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). "Under most circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the strong presumption that counsel's conduct was reasonable and professional." *Scheanette v. State*, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004). Thus, trial counsel should generally be given an opportunity to explain his actions before being found ineffective. *Johnson v. State*, 624 S.W.3d 579, 586 (Tex. Crim. App. 2021); *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003).

A silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Johnson*, 624 S.W.3d at 586; *Rylander*, 101 S.W.3d at 110-11; *Thompson*, 9 S.W.3d at 814. Thus, if the record does not contain affirmative evidence of trial counsel's reasoning or strategy, we presume counsel's performance was not deficient. *Johnson*, 624 S.W.3d at 586; *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002).

Here, the record is silent as to why trial counsel did not move to dismiss Count I of the superseding indictment. Accordingly, we presume counsel's performance was not deficient.

Ingram's first issue is overruled.

SUFFICIENCY OF THE EVIDENCE

Ingram next challenges the sufficiency of the evidence to support his convictions under Counts II (heroin), III (cocaine), and IV (methamphetamine) of the superseding indictment. Specifically, he contends the evidence is insufficient to prove he had: 1) actual care, custody, or control, *i.e.* possession, of any of the controlled substances alleged, *see* TEX. PENAL CODE § 1.07(a)(39) (defining possession as actual care, custody, control, or management); and 2) any intent to deliver a controlled substance.

### *Standard of Review*

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson,* 443 U.S. at

319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson,* 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

### *Affirmative Links*

Ingram first asserts the evidence was insufficient to prove he possessed the controlled substances because the evidence did not affirmatively link him to those substances.

A defendant's mere presence at the location where contraband is found is insufficient, by itself, to establish possession of that contraband. *See Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016); *Evans v. State*, 202 S.W.3d

158, 161 (Tex. Crim. App. 2006).  When, as in this case, contraband is not in the exclusive possession of the defendant, a fact finder may nevertheless infer that the defendant intentionally or knowingly possessed the contraband if there are sufficient independent facts and circumstances, *i.e.* "links", justifying such an inference.  *See Tate*, 500 S.W.3d at 413-14; *Evans*, 202 S.W.3d at 161; *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005).  It is the logical force of all of the evidence, both direct and circumstantial, not the number of links, that is dispositive of the possession question.  *See Evans*, 202 S.W.3d at 162.  This is because ultimately, the inquiry remains set forth in *Jackson*:  Based on the combined and cumulative force of the evidence and any reasonable inferences therefrom, was a jury rationally justified in finding guilt beyond a reasonable doubt?  *Tate*, 500 S.W.3d at 414.

In a text to Oaks two months before his arrest, Ingram said he was waiting for a customer to pick up "14 Gs" which indicated to a former drug and sex trafficking investigator that Ingram had 14 grams of controlled substances such as methamphetamine, cocaine, crack, or heroin.  After Ingram was arrested for these drug offenses and while still in jail, Ingram wrote to a female "pen pal" and admitted that he had been caught on I-35 with large amounts of heroin and methamphetamine.  At trial, Oaks testified that in a Facebook conversation with Ingram the day before the traffic stop that led to Ingram's

arrest, Oaks told Ingram she would be willing to split the proceeds of a "slab" of crack cocaine and prostituting "the girls" 50/50. Oaks said she brought the drugs that were found in her vehicle because Ingram was going to help her sell them. He knew the area and knew where to start selling. Oaks said it was no surprise to Ingram that she brought the drugs to Waco.

Further, the evidence showed that Ingram ran a prostitution ring. A witness who provided education and training in human trafficking testified that:

> In a sense, drugs are weaponized in this arena. They can be used in a variety of ways to induce compliance, to lure in an unsuspecting and unwilling victim. It could keep a victim under control. It could even incapacitate a victim, depending on how they're used. There's also oftentimes you would see pimps also force the girl to make drug sales.

After reviewing all the evidence of the case and in light of the above facts and circumstances, the jury was justified in inferring that Ingram was in possession of the heroin, cocaine, and methamphetamine found in the trunk of Oaks's vehicle.

### *Intent to Deliver*

Next, Ingram contends there was no evidence to prove he had any intent to deliver the controlled substances.

Intent to deliver may be proved with circumstantial evidence. *Kibble v. State*, 340 S.W.3d 14, 18 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). Some

factors to consider in determining whether a defendant possessed contraband with an intent to deliver include: (1) the nature of the location where the defendant was arrested, (2) the quantity of drugs the defendant possessed, (3) the manner of packaging the drugs, (4) the presence or absence of drug paraphernalia, (5) whether the defendant possessed a large amount of cash, and (6) the defendant's status as a drug user. *Hughitt v. State*, 539 S.W.3d 531, 542 (Tex. App.—Eastland 2018) (pet. dism'd). This list of factors is not exclusive, nor must they all be present to establish a defendant's intent to deliver. *Id.*

Along with the three different controlled substances were smaller baggies, a scale, and $120 in cash. An officer called in to search the women testified as to the significance of the items found with the drugs. She stated that the amount of each substance along with the variety of substances indicated delivery rather than personal use. She also explained that the baggies, "those that you would package the drugs in; and then, the scale, which is obviously used to weigh out into the small—smaller quantities to place inside the bags," were consistent with delivery rather than personal use. Additionally, three of the four women in the vehicle possessed drug paraphernalia: two meth pipes and marijuana roaches.

In light of the above facts and circumstances along with testimony that Ingram was going to help Oaks sell the drugs and that two months prior to his arrest, Ingram waited on a customer to pick up "14 G's," the jury could have determined that Ingram had the intent to deliver the controlled substances.

After considering all of the evidence in the light most favorable to the verdict, we determine that, based on the combined and cumulative force of the evidence and reasonable inferences therefrom, a rational jury could have found beyond a reasonable doubt that Ingram possessed heroin, cocaine, and methamphetamine with the intent to deliver each.

Ingram's second, third, and fourth issues are overruled.

**CONCLUSION**

Having overruled each issue presented on appeal, we affirm the trial court's judgments.

LEE HARRIS
Justice

OPINION DELIVERED and FILED:  August 28, 2025

Before Chief Justice Johnson,
    Justice Smith, and
    Justice Harris
Affirmed
Do Not Publish
CRPM

